Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| JAVIER LUCIANO CRUZ<br><br>Recurrente<br><br>v.<br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITRACIÓN<br><br>Recurrido | KLRA202500094 | Revisión administrativa procedente del Departamento de Corrección y Rehabilitación<br><br>Caso Núm.:<br>P676-28421<br><br>Sobre:<br>Clasificación de Custodia |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio y el Juez Rodríguez Flores

Rodríguez Flores, juez ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 21 de marzo de 2025.

Comparece el señor Javier Luciano Cruz (en adelante, Sr. Luciano Cruz o recurrente), por derecho propio y en forma pauperis[1], y solicita que revoquemos la determinación emitida el 19 de diciembre de 2024, por el Comité de Clasificación y Tratamiento del Departamento de Corrección y Rehabilitación (en adelante, Comité de Clasificación), que ratificó el nivel de custodia máxima en que se encuentra el recurrente.

Evaluado el recurso, este Tribunal resuelve confirmar la decisión recurrida.

**I.**

Según surge de los documentos que conforman el expediente ante nuestra consideración, Sr. Luciano Cruz cumple una sentencia de veinticinco (25) años de prisión por los delitos de asesinato en segundo grado, agresión e infracción al Artículo 5.04 de la Ley de

---

[1] El recurrente acompañó una *Solicitud y declaración para que se exima de pago de arancel por razón de indigencia,* debidamente cumplimentado y juramentado. Se autoriza la litigación *in forma pauperis* del recurrente.

Armas. El mínimo de su sentencia lo extinguió el 21 de septiembre de 2021. La fecha de excarcelación está prevista para el 10 de mayo de 2031. El recurrente está clasificado en custodia máxima desde el 4 de octubre de 2021.

El 19 de diciembre de 2024, el Comité de Reclasificación efectuó una revisión rutinaria de custodia y plan institucional del Sr. Luciano Cruz. En la *Resolución* emitida en igual fecha, la agencia hizo un recuento del historial de querellas presentadas contra el recurrente durante su confinamiento y, en las conclusiones de derecho que dieron base a la determinación, consignó lo siguiente:

> Durante el periodo de evaluación fue objeto de informe disciplinario por hechos ocurridos el 24 de mayo de 2024 en la que se le ocupó un teléfono celular, no obstante la querella le fue desestimada debido a que el oficial correccional que radicó la querella ya no labora para [la] agencia, no obstante se toma en consideración este informe debido a que los hechos sí ocurrieron por lo tanto los ajustes institucionales tendrán que observarse en este nivel de custodia.[2]

De tal forma, el Comité de Reclasificación ratificó el nivel de custodia máxima del recurrente.

En desacuerdo con la decisión, el Sr. Luciano Cruz presentó una oportuna solicitud de reconsideración.[3] El 8 de enero de 2025, el Comité de Reclasificación resolvió "[n]o [acoger] la solicitud de reconsideración" del Sr. Luciano Cruz y explicó que:

> De la evaluación del expediente se desprende que cuenta con Cuarto Año de Escuela Superior. Completó las Terapias Aprendiendo a Vivir Sin Violencia el 11 de marzo de 2024. Completó Terapias de Trastorno Adictivos el 21 de marzo de 2024. Completó las terapias de Control de Impulsos el 9 de octubre de 2024.
>
> Cuenta con un historial de actos de indisciplina que incluyen:
>
> - 4 de mayo de 2011 – Posesión de materiales asociados a las comunicaciones
> - 6 de mayo de 2011 – Agresión a un Oficial Correccional
> - 21 de octubre [de] 2012 – Entorpecer visibilidad
> - 17 de agosto [de] 2014 – Violar normas de seguridad

---

[2] Véase, *Resolución* en el apéndice no numerado del recurso.
[3] En su escrito de revisión, el recurrente advierte que no incluyó su solicitud de reconsideración en el apéndice del recurso.

- 31 de marzo [de] 2015 – Violar normas de seguridad, desobedecer orden directa
- 14 de marzo [de] 2016 – Posesión de arma blanca
- 23 de junio [de] 2018 – Estar en área no autorizada, no mantener código de vestimenta, desobedecer orden directa
- 30 de enero [de] 2024 – Contrabando peligroso y posesión de teléfono celular

En adición cuenta con informe negativo del 30 de mayo de 2024 el cual indica que mediante el Cell-Sense, se detectó que tenía un objeto extraño en su posesión. Por lo que fue llevado a Sala de Emergencia en donde se ordenó por el área médica una placa de rayos x, con el resultado de que tenía en su cavidad anal un objeto extraño. Acto seguido el confinado hizo entrega de un teléfono celular.

Al aplicar la escala de reclasificación de custodia esta arrojó una puntuación de 3, ubicándolo en custodia mínima. No obstante, el Comité de Clasificación y Tratamiento acogió la Modificación Discrecional "Desobediencia a las Normas" para mantenerlo en el nivel de custodia máxima, explicando que cuenta con un informe negativo del 30 de mayo de 2024.

A la luz de lo anteriormente expuesto, se concurre con la determinación del Comité de Clasificación y Tratamiento. Deberá permanecer en custodia en (sic) máxima.[4]

Insatisfecho aún, el 29 de enero de 2025[5], el Sr. Luciano Cruz instó *Escrito de Revisión,* en el que apuntó el siguiente señalamiento de error:

Erró la recurrida al retener en el nivel de custodia máxima utilizando argumentos vagos e insostenibles los cuales en la amplia y general de (sic) la jurisprudencia y reglamentos son claramente derrotados, convirtiéndose la determinación recurrida en una acción disciplinaria ULTRA VIRES y no en un método rehabilitador la cual constituye un castigo cruel e inusitado y un clar[o] abuso de discreción.

En síntesis, arguyó que el Comité de Clasificación abusó de su discreción al aplicar la modificación discrecional de *desobediencia ante las normas* para ratificar el nivel de su custodia

---

[4] Véase, decisión en reconsideración en el apéndice no numerado del recurso.

[5] El recurso presentado por el Sr. Luciano Cruz tiene el ponche del Departamento de Corrección y Rehabilitación de 29 de enero de 2025. Se entiende que el recurso fue presentado en la fecha de entrega a la institución carcelaria. *Álamo Romero v. Adm. De Corrección,* 175 DPR 314, 323 (2009).

en máxima, basado en un informe disciplinario de 30 de mayo de 2024 cuya querella fue desestimada.

**II.**

Es doctrina reiterada que las decisiones de los organismos administrativos merecen la mayor deferencia judicial.[6] Ello, en vista al gran conocimiento especializado y experiencia que las agencias ostentan.[7] Esta deferencia se debe a que son estos los que cuentan con el conocimiento experto y con la experiencia especializada de los asuntos que les son encomendados.[8]

Así pues, la decisión de una agencia administrativa gozará de una presunción de legalidad y corrección que será respetada, siempre que la parte que la impugna no produzca evidencia suficiente para rebatirla.[9] El criterio rector para la revisión de este tipo de determinación es el de razonabilidad, esto es, si la actuación de la agencia fue ilegal, arbitraria, o tan irrazonable que constituye un abuso de discreción.[10]

La revisión usualmente comprende las siguientes áreas: (1) si se concedió el remedio apropiado; (2) si las determinaciones de hechos son conformes al principio de evidencia sustancial que obre en el expediente administrativo; y (3) si las conclusiones de derecho son correctas.[11]

En el contexto de las determinaciones administrativas sobre el nivel de custodia, el Tribunal Supremo ha opinado que, "[a]l

---

[6] *Moreno Lorenzo y otros v. Depto. Fam.*, 207 DPR 833, 839 (2021); *Graciani Rodríguez v. Garage Isla Verde*, 202 DPR 117, 126 (2019); *OSC v. CODEPOLA*, 202 DPR 842, 853 (2019).

[7] *OCS v. Universal*, 187 DPR 164, 178 (2012); *Pagán Santiago, et al. v. ASR*, 185 DPR 341, 358 (2012).

[8] *OEG v. Martínez Giraud*, 210 DPR 79, 88-89 (2022); The *Sembler Co. v. Mun. de Carolina*, 185 DPR 800, 821 (2012); *Accumail P.R. v. Junta Sub. A.A.A.*, 170 DPR 821, 829 (2007); *Mun. San Juan v. Plaza Las Américas*, 169 DPR 310, 324 (2006); *Otero v. Toyota*, 163 DPR 716, 727 (2005); *Rebollo v. Yiyi Motors*, 161 DPR 69 (2004).

[9] *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 215 (2012).

[10] *Íd.*, pág. 216; *Transp. Sonell v. Jta. Subastas ACT*, 214 DPR ___ (2024), 2024 TSPR 82 (opinión del 24 de julio de 2024).

[11] *Moreno Lorenzo y otros v. Depto. Fam.*, supra, págs. 839-840; *Asoc. Fcias. v. Caribe Specialty, et al. II*, 179 DPR 923, 940 (2009).

momento de determinarse la procedencia de un cambio en el nivel de custodia, deberá considerarse una serie de factores subjetivos y objetivos, para cuya atención se requiere la pericia del [Departamento de Corrección y Rehabilitación]".[12] También ha expresado que:

> Según el Manual, es al Comité de cada institución carcelaria a quien corresponde realizar la evaluación periódica correspondiente al nivel de custodia asignado a los confinados. (...)
>
> Por lo general, la composición de estos comités la conforman peritos en el campo tales como técnicos sociopenales y oficiales o consejeros correccionales. Estos profesionales cuentan con la capacidad, la preparación, el conocimiento y la experiencia necesarios para atender las necesidades de los confinados y realizar este tipo de evaluaciones. Por esta razón, una determinación formulada por el referido Comité debe ser sostenida por el foro judicial siempre que no sea arbitraria, caprichosa y esté fundamentada en evidencia sustancial. Es decir, siempre que la decisión sea razonable, cumpla con el procedimiento establecido en las reglas y los manuales, y no altere los términos de la sentencia impuesta, el tribunal deberá confirmarla.[13]

**B.**

La Sección 19 del Artículo VI de la Constitución del Estado Libre Asociado de Puerto Rico, LPRA, Tomo 1, dispone que será política pública del Estado reglamentar las instituciones penales para que sirvan a sus propósitos en forma efectiva, y propender, dentro de los recursos disponibles, al tratamiento adecuado de los delincuentes para hacer posible su rehabilitación moral y social.[14]

Cónsono con ello, el Art. 10 del Plan de Reorganización Núm. 2-2011[15], estatuye que "[l]a población correccional será sometida a evaluaciones periódicas con el propósito de conocer y analizar su situación social, física, emocional y mental, historial delictivo e identificar sus capacidades, intereses, motivaciones, controles y

---

[12] *Cruz v. Administración*, 164 DPR 341, 352 (2005).
[13] *Íd.,* págs. 354-355.
[14] *López Borges v. Adm. Corrección*, 185 DPR 603, 619 (2012).
[15] Plan de Reorganización del Departamento de Corrección y Rehabilitación de 2011, 3 LPRA Ap. XVIII.

limitaciones, a los fines de clasificarlos y determinar el plan de acción a tomar en cada caso, en armonía con los principios de tratamiento individualizado y seguridad pública enmarcados en los propósitos de este Plan".[16]

A tales fines, el Departamento aprobó el *Manual para la Clasificación de los Confinados*, Reglamento Núm. 9151, del 22 de enero de 2020, efectivo a partir del 20 de febrero de 2020. El propósito de la reglamentación es establecer un sistema organizado para ingresar, procesar y asignar a los confinados a instituciones y programas del Departamento.[17]

Como parte de la política de la agencia, se encuentra la clasificación "de acuerdo con el nivel de custodia restrictiva más bajo que se requiera, la asignación de vivienda y la participación de los confinados en programas de trabajo y educación, adiestramiento vocacional y recreación que sean apropiados para ellos".[18] Precisamente, el Tribunal Supremo ha explicado que "la importancia de la reducción del nivel de custodia, como parte del proceso de rehabilitación, se refleja en la regla que enuncia constantemente el [Reglamento Núm. 9151][19]: se tiene que ubicar a cada confinado en el nivel de custodia menos restrictivo posible".[20]

De otro lado, el Artículo IV, Sección 1, del Reglamento Núm. 9151 establece que el Comité de Clasificación y Tratamiento es el responsable de evaluar las necesidades de seguridad y de los programas de los confinados sentenciados. El Comité tiene a su cargo la evaluación de los confinados, en lo concerniente a sus necesidades, aptitudes, intereses, limitaciones y funcionamiento

---

[16] *Íd.*
[17] Art. II del Reglamento Núm. 9151.
[18] Art. III (1) del Reglamento Núm. 9151.
[19] A pesar de que la citada opinión cita el *Manual de Clasificación* de 2000, los principios invocados permanecieron inalterados en la versión del 2020. Perspectiva General (I) del Reglamento Núm. 9151.
[20] *López Borges v. Adm. Corrección*, supra, pág. 608.

social.[21] Sus objetivos primordiales son la rehabilitación, la asignación de custodia y la seguridad pública.[22]

El sistema consta de una clasificación inicial del confinado, seguida de un proceso de reclasificación[23] periódica de cada reo. En lo atinente, una clasificación objetiva se refiere al "proceso confiable y válido mediante el cual se clasifica a los confinados y se les subdivide en grupos, basándose en varias consideraciones, entre las que se incluyen: la severidad del delito, su historial de delitos anteriores, su comportamiento en las instituciones, los requisitos de seguridad y supervisión y las necesidades identificables de programas y servicios específicos".[24] La reglamentación establece, además, que la reclasificación de confinados es el procedimiento para la revisión de la asignación del nivel actual de custodia de cada confinado, con el fin de determinar cuán apropiada es ésta.[25] Al exponer los objetivos perseguidos por dicho sistema, el Reglamento Núm. 9151 dispone el uso del formulario *Escala de Reclasificación de Custodia (Casos Sentenciados)*, reproducido en el Apéndice K, del cuerpo reglamentario, y aclara que:

> [...] La reevaluación de custodia no necesariamente tiene como resultado un cambio en la clasificación de custodia o la vivienda asignada. Su función primordial es verificar la adaptación del confinado y prestarle atención a cualquier situación que pueda surgir.
>
> La reevaluación de custodia se parece a la evaluación inicial de custodia, pero recalca aún más en la conducta institucional como reflejo del comportamiento real del confinado durante su reclusión. Es importante que los confinados que cumplan sentencias prolongadas tengan la oportunidad de obtener una reducción en niveles de custodia mediante el cumplimiento con los requisitos de la institución.[26]

---

[21] Art. IV, Sec. 2 (IV) del Reglamento Núm. 9151.
[22] Art. IV, Sec. 2 (IV)(A) del Reglamento Núm. 9151.
[23] El Reglamento Núm. 9151 define la reclasificación como la "[r]evisión periódica de los confinados en lo que respecta a su progreso como parte del Plan Institucional, así como también a su categoría de custodia". Art. IV, Sec. 1 del Reglamento Núm. 9151.
[24] Art. IV, Sec. 1 del Reglamento Núm. 9151.
[25] Art. IV, Sec. 7 (I) del Reglamento Núm. 9151.
[26] Art. IV, Sec. 7 (II) del Reglamento Núm. 9151.

La segunda sección de la *Escala de Reclasificación de Custodia,* denominada *Evaluación de Custodia,* detalla el proceso para revisar y actualizar la evaluación inicial del confinado. La sección contiene la escala de reclasificación de custodia para los casos de confinados sentenciados y enumera ocho criterios para realizar la correspondiente evaluación.  Estos son: (1) la gravedad de los cargos y sentencias actuales; (2) el historial de delitos graves previos; (3) el historial de fuga o tentativas de fuga; (4) el número de acciones disciplinarias; (5) las acciones disciplinarias serias; (6) las sentencias anteriores por delitos graves como adultos; (7) la participación en programas; y, (8) la edad actual del miembro de la población correccional.[27]

Una vez completados los ocho renglones de la *Evaluación de Custodia* en la *Escala de Reclasificación de Custodia,* a base del resultado que se obtenga, se recomienda un nivel de custodia, que puede variar entre máxima, mediana o mínima.  El nivel de custodia según la escala es el siguiente: 5 puntos o menos, corresponde a una custodia mínima; 5 puntos o menos si el confinado tiene una orden de arresto o detención, corresponde a una custodia mediana; 6 a 10 puntos, corresponde a una custodia mediana; 7 puntos o más en los renglones 1 al 3, corresponde a una custodia máxima; y, 11 puntos o más en los renglones 1 al 8, corresponde a una custodia máxima.[28]

También, el Manual de Clasificación establece unas consideraciones especiales de manejo, las cuales versan sobre los asuntos de administración que merecen atención y posible intervención del personal en términos de vivienda o supervisión especial.[29]

---

[27] Apéndice K, Sec. II, del Reglamento Núm. 9151.
[28] Apéndice K, Sec. III, del Reglamento Núm. 9151.
[29] Los factores de administración son los siguientes: custodia protectiva (para garantizar su seguridad y bienestar); joven adulto (menor de 21 años); psiquiátricas; sesenta años o más de edad; riesgo de suicidio; problemas médicos;

La tercera sección de la *Escala de Reclasificación de Custodia* establece unos criterios adicionales, tanto discrecionales como no discrecionales. Una modificación discrecional se refiere al "conjunto de factores específicos de clasificación que el personal puede usar para modificar la puntuación de clasificación de un confinado, pero solamente con la aprobación del supervisor de clasificación."[30]

La reglamentación establece unas **modificaciones discrecionales para un nivel de custodia más alto**. Estas son: (1) la gravedad del delito; (2) el historial de violencia excesiva; (3) la afiliación con gangas; (4) la dificultad en el manejo del confinado; (5) los grados de reincidencia; (6) el riesgo de fuga; (7) el comportamiento sexual agresivo; (8) los trastornos mentales o desajustes emocionales; (9) si representa una amenaza o peligro; (10) **la desobediencia de las normas** o rehusarse al plan de tratamiento; y, (11) el reingreso por violación de normas.[31]

No obstante, "toda modificación discrecional deberá estar **basada en documentación escrita** que evidencia ajustes adecuados y que se ha beneficiado de los programas de tratamientos requeridos, **proveniente de informes disciplinarios**, informes de querellas, informes de libros de novedades, documentos del expediente criminal o social, y cualquier otra información o documento que evidencia ajustes o comportamiento del confinado contrario a las normas y seguridad institucional".[32]

Por otra parte, el Reglamento Núm. 9151 incluye determinadas modificaciones no discrecionales. Aunque la reglamentación no define el término, de su cuerpo se desprende que estos factores inciden en la modificación de la clasificación de

---

impedimentos físicos, y cualquier otra consideración de manejo relacionados con requisitos de vivienda o de supervisión especiales. Apéndice K, Sec. III (B) del Reglamento Núm. 9151.

[30] Art. IV, Sec. 1 del Reglamento Núm. 9151.

[31] Apéndice K, Sec. III (D) del Reglamento Núm. 9151.

[32] Apéndice K, Sec. III (D) del Reglamento Núm. 9151.

custodia y la persona que califica no tiene discreción en cuanto a su aplicación, sino que debe limitarse a anotar si el confinado cumple o no con los criterios consignados.  Los factores son: (1) confinados con sentencias de 99 años o más; (2) orden de deportación; y, (3) más de 15 años antes de la fecha máxima de libertad bajo palabra.[33]

**III.**

El Sr. Luciano Cruz aduce que el Comité de Clasificación abusó de su discreción al aplicar la modificación discrecional de *desobediencia a las normas* basado en un informe disciplinario de 30 de mayo de 2024 cuya querella fue desestimada para, de esa forma, ratificar su nivel de custodia en máxima. Entiende que la desestimación de la mencionada querella impedía que se le aplicara la referida modificación discrecional. Arguye que la evaluación de los criterios objetivos del formulario de clasificación de custodia arrojó una puntuación de tres (3) según la escala de reclasificación, lo que obligaba a la agencia a ubicarlo en un nivel de custodia menor. No tiene razón.

El Apéndice K, Sec. III (D) del Reglamento Núm. 9151 define la mencionada modificación discrecional de la siguiente forma:

> **Desobediencia ante las normas o rehusarse al plan de tratamiento**: Significa que el confinado presenta una marcada tendencia a desobedecer las normas y las reglas de la institución. Esto puede incluir mostrar desinterés en participar en programas de tratamiento y no cumplir o rehusarse al plan de tratamiento trazado y la comisión de delitos en prisión, esto según se desprenda de la documentación apropiada.

Según expuesto, el propósito de la evaluación periódica es verificar la adaptación del confinado y prestarle atención a cualquier situación que pueda surgir. La evaluación periódica no necesariamente tiene como resultado un cambio en la clasificación de custodia. En el balance de intereses que conlleva tal determinación, el Comité de Clasificación tiene que sopesar criterios

---

[33] Apéndice K, Sec. III (C) del Reglamento Núm. 9151.

subjetivos y objetivos para asegurar la seguridad de la institución y la rehabilitación del confinado.

Si bien en la Escala de Reclasificación de Custodia el Sr. Luciano Cruz obtuvo una puntuación que equivale al nivel de custodia mínima, dicha evaluación no es el único criterio que utiliza el Comité de Clasificación para analizar y recomendar el nivel de custodia apropiado para el confinado. La agencia no está obligada a considerar, de manera aislada, el resultado de dicha evaluación y hacer abstracción de las demás circunstancias que rodean al evaluado.

La evaluación requiere que se tomen en consideración las modificaciones discrecionales, entre otros aspectos. En tal gestión, el Comité de Clasificación aplicó la modificación discrecional de *desobediencia ante las normas*, sustentado en el historial de querellas presentadas contra el recurrente durante su confinamiento y documentó la más reciente con el informe disciplinario por hechos ocurridos el 30 de mayo de 2024. El Comité de Clasificación especificó que, a pesar de que la querella que dio lugar a dicho informe había sido desestimada - porque el oficial correccional que la radicó ya no laboraba para la agencia- los hechos en ella relatados sí habían ocurrido y, por ello, fueron tomados en consideración para evaluar el nivel de custodia del recurrente. Así pues, ante la desobediencia de las normas y reglas de la institución, existió una modificación discrecional que llevaron al Comité de Clasificación a concluir que el Sr. Luciano Cruz debía permanecer en custodia máxima.

Por otro lado, el Sr. Luciano Cruz no ha negado los hechos imputados en el informe disciplinario del 30 de mayo de 2024. Éste objeta la ratificación de su custodia máxima meramente en la desestimación de la querella, sin mencionar propiamente que ello obedeció a razones no relacionadas con los hechos que la originaron.

El marco de revisión de este Tribunal se circunscribe a un estándar de razonabilidad. Conforme a la reglamentación aplicable, el DCR tiene la discreción de analizar caso a caso los criterios establecidos para evaluar el nivel de custodia en el cual debe estar cada confinado, en ánimo de salvaguardar tanto su efectiva rehabilitación, como la seguridad institucional y de la población confinada.[34] En ese contexto, concluimos que la determinación recurrida se fundamentó en el expediente administrativo y constituyó una actuación razonable de la agencia administrativa.

En resumen, la determinación administrativa merece nuestra deferencia. Las determinaciones de hechos de organismos y agencias tienen a su favor una presunción de regularidad y corrección que debe ser respetada mientras la parte que las impugne no produzca evidencia suficiente para derrotarlas. El Sr. Luciano Cruz no demostró que el Comité de Clasificación actuara de manera irrazonable, caprichosa, ilegal o fuera del marco de los poderes delegados a ésta. Por ello, procede confirmar la determinación recurrida.

**IV.**

Por los fundamentos antes expuestos, confirmamos la *Resolución* recurrida.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[34] *Lebrón Laureano v. Depto. Corrección,* 209 DPR 489, 513 (2022).